# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

BARBARA JEANNETTE FITCH, )
)
        Plaintiff, )
)
v. ) Case No. CIV-10-231-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Barbara Jeannette Fitch (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 19, 1949 and was 58 years old at the time of the ALJ's decision. Claimant completed her high school education with two years of college. Claimant is also a licensed beautician. Claimant has worked in the past as a secretary, office

manager, and clerk-typist. Claimant alleges an inability to work beginning January 1, 1979 due to limitations resulting from oculopharangeal muscular dystrophy, ptosis, problems with her feet, hands, back, neck, elbows, and ankles, muscle spasms, difficulty concentrating, fatigue, and depression.

## Procedural History

On February 9, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 22, 2008, an administrative hearing was held before ALJ Gene M. Kelly in Tulsa, Oklahoma. On June 27, 2008, the ALJ issued an unfavorable decision on Claimant's application. On May 15, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

## Errors Alleged for Review

4

Claimant asserts the ALJ committed error in: (1) failing to consider all of Claimant's medical evidence and to consider the combined effects of her impairments; (2) engaged in a faulty credibility analysis; (3) reaching an RFC where Claimant could perform her past relevant work; (4) reaching an RFC where Claimant could perform sedentary work; and (5) failing to fully develop the record.

**Consideration of Medical Evidence and Combination of Impairments**

Without doubt, the medical evidence in this case is somewhat limited since the relevant period dates from January of 1979 to December of 1982. Although Claimant states she suffered from blurred vision, difficulty with her eyes, arm and back pain back in 1979, she was not diagnosed with a condition at that time which would account for the symptoms. (Tr. 26-27). Claimant was diagnosed with ptosis (drooping of the eyelids) in 1982, making it difficult for her to see. (Tr. 28). She also states she suffered from phlebitis in her left foot which left it swollen and sore all of the time. (Tr. 29-30). Claimant also underwent carpal tunnel surgery in her right hand between 1980 and 1982. (Tr. 30, 39). Claimant testified she underwent neck surgery in 1982 due to pain. She had difficulty looking from side to side and up and down. (Tr. 31, 32).

5

Claimant states she could sit or stand in 1982 for no more than 30 minutes and could walk about a block. (Tr. 38, 48). She states she could lift no more than 10 pounds. (Tr. 38). She also had difficulty lifting, bending, and reaching overhead. (Tr. 42-44). Claimant states she was fatigued often in 1982 and suffered with blood clots. (Tr. 45-49). She was treated for depression in the early eighties and saw a psychiatrist but could not recall his name. (Tr. 50-52). She was placed on anti-anxiety and anti-depression medications. Id.

On September 21, 1982, Claimant was examined by Dr. P. N. Herrington in Tucson, Arizona for a lump in the back of her neck. (Tr. 185). Dr. Herrington noted Claimant had a non-descript lipoma at the base of her neck which would not account for her complaints of headache, burning eyes, visual problems, blackouts, pains in the arms, etc. Id. Dr. Herrington referred Claimant to a neurologist for evaluation.

A radiology report of Claimant's cervical spine from Dr. Robert Reese dated October 1, 1982 showed Claimant had a superficial mass over C-7, right side numbness, and no pain. (Tr. 174). Dr. Reese diagnosed Claimant with a possible lipoma over the posterior process of the cervicodorsal junction area with minimal spur on the anterior aspect of the body of C-5. (Tr. 174).

6

Also on October 1, 1982, Dr. Janet Johnson, a neurologist, noted Claimant's complaints and concluded it could have been a seizure equivalent but that the lipoma could not have accounted for her symptoms. Claimant was scheduled for a CT scan at that time. (Tr. 175, 218).

Claimant reports she has been diagnosed with muscular dystrophy a few months prior to the administrative hearing. She was not diagnosed with the condition during the relevant period. (Tr. 27-28).

In his decision, the ALJ determined Claimant suffered from the severe impairments of muscular dystrophy, ptosis, and problems with her feet, hands, back, neck, elbows, and ankles. (Tr. 11). He also determined Claimant had not performed any substantial gainful activity during the period between her alleged onset date of January 1, 1979 through her date of last insured of December 31, 1982. Id.

The ALJ also found Claimant retained the RFC to perform sedentary work except that she could stand for four hours out of an 8 hour workday, 30 minutes at a time; sit for 8 hours out of an 8 hour workday, one hour at a time; occasionally climb, bend, stoop, crouch, crawl, kneel, push, pull, reach overhead, twist body, nod head, finger, feel and grip; and should avoid find vision, low

light, dangerous machinery, and cold and damp environments. (Tr. 12).

The ALJ challenged Claimant's credibility based upon the lack of support of her allegations in the limited medical record. She testified to having carpal tunnel release surgery on one hand and needed it on the other, indicating the surgery was successful. She also states she could not move her neck but the medical records do not indicate this. The lipoma found on her neck would not account for the complaints she made. She also testified she could not touch her toes, squat, or climb stairs but no mention of these limitations are included in the medical records from the time. She also stated she had trouble driving but the records do not mention this limitation. Muscular dystrophy was not diagnosed at the time of the date of her last insurance. It was thought her complaints were attributable to TIAs or anxiety. (Tr. 13).

Claimant first contends the ALJ should have considered her impairments in combination. In doing so, Claimant seeks to have this Court conclude that some or all of her complaints related to her undiagnosed oculopharangeal muscular dystrophy. Claimant is also critical of the ALJ's failure to obtain further medical records to support her claim of depression.

The problem this Court finds with the ALJ's determination is

that he found Claimant suffered from muscular dystrophy during the period of last insurance, from January of 1979 to December of 1982, but then concludes that she was not diagnosed with the condition during that period. If the ALJ is concluding that Claimant suffered from the condition during the relevant period and is attributing her many complaints of pain to the onset of muscular dystrophy, then his decision is erroneous because he found many of Claimant's assertions of pain to be not credible. The decision is internally inconsistent in this regard. On remand, the ALJ shall determine from the available medical evidence and any other current source necessary as to whether Claimant suffered from muscular dystrophy during the period of last insured and, if so, the effect of her combined impairments upon her claim of disability.

### Credibility Analysis

Again, the ALJ's credibility analysis is flawed if he finds Claimant suffered from muscular dystrophy during the relevant period. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by

substantial evidence. Id.   Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391.   However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).   The ALJ shall re-evaluate his findings on

credibility based upon his conclusions concerning Claimant's condition on the date of last insured.

### RFC Evaluation

The ALJ's RFC conclusions were largely based upon his questioning of the vocational expert. His final hypothetical centered upon whether an individual with the limitations alleged by Claimant could perform her past relevant work. The vocational expert testified she could not. (Tr. 63). Depending upon whether the ALJ determines Claimant suffered from muscular dystrophy during the period of last insured an whether that condition gave support to Claimant's assertions of limitation in her testimony, the ALJ's RFC findings may be affected. Consequently, the ALJ shall reconsider his RFC findings in light of his re-evaluation of Claimant's condition during the relevant period.

### Duty to Develop the Record

Undoubtedly, the ALJ has a duty to develop the record. Henrie v. U.S. Dept. of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993). Claimant suggests the ALJ should have made an effort to obtain further medical records. This goal is laudable but not always achievable, especially when the records relate to a period from over thirty years in the past. The ALJ shall make every effort **with Claimant's assistance and recollection** to obtain all

available medical records which might have been generated during the relevant period.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 29th day of August, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE